It is contended by the counsel for the defendant that were it true that the sovereign power, like an individual, could be (127) estopped, yet where the conveyance is by grant without warranty, express or implied, as in the present case, there can be no estoppel; and he refers the estoppel arising from bargains and sales, and other conveyances deriving their efficacy from the statute of uses, entirely to the express warranties which are attached thereto; and in feoffments, to the implied warranty arising thereon before the statute of quia emptores, from the services due from the feoffee and his heirs to the feoffor and his heirs; and since the statute, to the warranty implied during the life of the feoffee, probably from the nature of the conveyance, or from an adherence to the rule after the reason of it had ceased, a thing not very uncommon in our law, as we still retain many rules growing out of the doctrine of feuds, although feuds have long since ceased among us. I think that the counsel is wrong in attributing the estoppel to the warranty. The estoppel arises entirely out of the affirmations of matters of fact made in the deed. He has confounded estoppels and rebutters; things essentially different in their nature, although frequently producing the same results. A rebutter operates on the right of action to the estate. It operates as to strangers as well as between parties and privies, which is a consequence flowing from its operation on the right to the estate. An estoppel operates entirely as to facts; its effect is to conclude the parties from making, and of course proving, the facts to be otherwise than they are stated or acknowledged to be in deed or other transaction out of which the estoppel arises. My collateral ancestor deprives me of my estate, and makes a feoffment in fee to a stranger with warranty, and *Page 55 
dies; the warranty descends on me as his heir (and this is done under such circumstances as that it does not amount to what is called a warranty commencing by disseizin). In any controversy which I may have with any one in regard to the lands, after the warranty has descended on me, this feoffment and warranty will bar my right of action to the estate. If I had lost my right of entry when the warranty descended on me, it is as effectual to bar or destroy my estate (and (128) that with regard to the whole world) as if I myself had made a feoffment of it. But if I today should make a feoffment or bargain and sale of lands, which do not belong to me, to A., and tomorrow purchase the estate of B., to whom it belonged, although nothing in reality passed from me to A., I, having nothing in the estate, could not transfer anything to him, for a person cannot grant that which he has not; yet in a controversy with B. I shall not be permitted, that is, I shall be estopped, to aver and, of course, to prove that I had nothing when I granted to him, and set up in myself the title which I had afterwards acquired of B.; for, having affirmed in my conveyance to him that I had the estate, I shall not afterwards affirm that another had it. But this estoppel is confined entirely to parties and privies; it affects not a stranger; and as it affects not a stranger, neither will it affect me in a controversy with him; for the agreement between A. and myself as to certain facts does not make the facts in reality so. The agreement as to how they are is only binding upon us and our privies; in our controversies with others we are at liberty to show how they really are. In a controversy, therefore, between myself and a stranger, if the stranger, for the purpose of showing that A. has title, and if A. had, I could not have it, shows my deed to him, it is competent for me to show that when I granted to A. I had nothing in the land, and I will prevail against him on my title derived from B.
Further, to show that estoppels operate as to the facts only: if A., reciting that he had not an estate in the lands intended to be granted, but that another has, bargains and sells them to B., if A. in reality had nothing in the lands, nothing passes, not even by estoppel, for there is affirmation against affirmation, and, of course, no estoppel can arise. To use the language of Lord Coke, there is estoppel against estoppel, and the matter is left at large. So if one has an interest, although not as large as the estate granted, as if lessee for life or years, (129) bargains and sells in fee, the affirmation of title shall be confined to the estate for life or years, and no estoppel arises; as if A. is tenant for the life of B., and A. bargains and sells the lands to C. and his heirs, and A. afterwards purchases the reversion from the owner and then B. dies, A. may recover the lands from C., notwithstanding his deed to C. and *Page 56 
his heirs; that is, the affirmation of title is confined to this, that A. had an estate during the life of B. Cases might be multiplied to show the difference between a rebutter arising from a warranty and an estoppel. We may add, also — which would seem of itself conclusive — that estoppels arise in cases where there can be no warranty; acts in pais, acts in the country. Nor is the reason more sound that estoppels arise only from such conveyances as operate by way of transmutation of possession, as a feoffment, and not on those which operate under the statute of uses; for as to their affirmation, and of course their estoppels, they are precisely alike. A feoffment, accompanied by livery of seizin, passes the estate; there is an actual tradition; the estate passes as to all the world, and any person may show it, because the fact is so. But in a bargain and sale there is no actual tradition; the statute only transfers the seizin which the bargainor has; if he has none, none in reality is passed, and strangers cannot be affected by a thing which never happened; but as between the parties the seizin shall be considered as passing, because the bargainor is estopped from showing that he was not seized, and if he was seized the statute transferred it. As between the parties, the bargain and sale shall pass what it purports to pass; as to strangers, what it actually does pass. Thus a feoffment in fee by a tenant for life is a forfeiture, because, as to all the world it passes the fee; it displaces the estate of the reversioner; it is, therefore, an injury to him which is punished by a forfeiture of the life estate. But if tenant for life (130) bargains and sells the lands in fee, it is no forfeiture; for, as to all but the parties to the bargain and sale (in which term I include privies), it passes only the life estate, for that was the extent of the bargainor's seizin; and passing only the life estate, it did not displace the reversion; it was, therefore, no injury to the reversioner, and, therefore, no cause of forfeiture. Nor do the authorities cited from Cruise and Sheppard support the position contended for. They were cases of releases, operating by way of mitter le droit, or extinguishment. In them no estate passed by the release, but only a right, say, a right of action. Rights are not the subject of transfer or conveyance, but estates are. A right to an estate is not demanded in an action, but the estate itself.Rights may be released or extinguished, but not granted. If A. is out of possession, and assigns or transfers to B., who has no estate in the lands, B. can sustain no action for the lands, as well for the reason that the subject-matter was not the object of a grant as from the rule said to be founded on policy, that no man can sell his right of going to law. If A. releases to B. all his right in certain lands, B. having no estate in the lands, nothing passes, not even by estoppel, for that cannot pass by estoppel which in reality cannot pass by a conveyance. In the *Page 57 
cases cited the releasor, by his release, affirmed that he had a right to the lands, and no estate therein; for a release presupposes the right to be in the releasor, and the estate in the releasee (I mean as to releases operating by way of mitter le droit or relinquishment), and the release can support no action on such acquisition; it only confirms and strengthens the estate which he had before. If A., therefore, releases his right to B. in a certain estate which B. has in possession, and A. afterwards acquires a good estate in the lands, he may set it up, for it is a different thing from that which he affirmed he had in his release; and estoppels being odious, the party shall not be concluded from showing the truth, unless the affirmation be directly upon the point, not to be arrived at by argument and conclusion. And this distinction between an estate and a right is almost daily acted on. In our actions on covenants (131) for title and quiet enjoyment, if the right and estate were the same thing, no breach could ever with propriety be assigned for breaches of covenants for quiet enjoyment contained in an indenture of bargain and sale; for in such cases the bargainee is as much estopped as the bargainor. But it is as to the estate in which they are estopped. The breach is not that no estate passed, but that an estate did pass, but that the title to that estate was not good, and that he was disturbed in the enjoyment ofthat estate by one having title. In fact, the very idea of annexing a warranty or covenant presupposes an estate to pass; for unless the estate passes there can be no warranty, which is a dependent covenant, as is a covenant for quiet enjoyment, although by the phraseology there may be an independent covenant, but it is not attached in law to the estate. This very clearly proves what is affirmed, and what estoppels arise out of a bargain and sale.
With respect to the case cited by the counsel for the plaintiff from Co. Lit., where Edward IV. was barred, that was clearly the case of a rebutter arising from a warranty made by his collateral ancestor, the Duke of Cornwall, which descended on Edward IV. As to the case from Massachusetts, the operation of the resolve of the Legislature was not so much to declare where certain falls in the river were, as to locate a prior grant; it operated to locate the lands where the Legislature said the falls were; it operated as a new grant, which the Legislature certainly had the power then to make; it confirmed the old grant, and fixed it at certain falls; and if such was not its operation, the decision was wrong, for a sovereign cannot be estopped. But the sovereign power conveys neither by feoffment, bargain and sale, nor any conveyance dependent on livery of seizin or transferring uses into possession. By grant the sovereign will alone passes the property, evidenced by matter of record; and all grants from the sovereign are matter of record, (132) *Page 58 
and, when under the great seal of the State, prove themselves. And I know of no case where the sovereign power has been estopped; the cases are all the other way, and policy and justice require that they should be so. This sovereign, or sovereign power, is a trustee for the people; it acts by agents; the people should not be bound by any statement of facts made by those agents. For their benefit, the truth may always be shown, notwithstanding any former statement to the contrary. Where the State, therefore, succeeded to the rights of the king, and to those of Lord Granville, it was competent for the State to show that the king's grant to the plaintiff in 1768 passed nothing, the king having granted the same lands to Lord Granville in 1744; for the king, or sovereign power, cannot, any more than an individual, grant that which he has not. The lands in question were the property of the State when the grant was made to the defendant, for the State, I think, certainly succeeded to Lord Granville's lands, by the most complete confiscation, by taking the very property to itself, as it did by the entry laws, and passed them to the defendant by its grant in 1801.
As to the evidence which was received to establish the line of Lord Granville, I can see no objection to it. Common reputation is certainly admissible in questions of boundary; and it was applied to this case much more consistently with the spirit of the rule, and the reasons on which it was founded, than when we permit a witness to swear that a person since dead told him that a certain tree in a remote wood was a line or a corner tree of some other person's land; and as to the observations made by Mr. Mushat, fixing the latitude, although such observations may not lead to absolute certainty, yet it is the best method which we have to ascertain the fact, and certainly better than by going down to the seashore and running out west; for the latitude can as well (133) be taken here, or in Lincoln, as there. It would be impossible to continue the same course such a distance by the compass alone. Astronomical observations must, therefore, be frequently made to keep the course correct; for I do not agree with the plaintiff's counsel, but adopt the argument of the counsel for the defendant, that the cedar stake or the houses by which the line is said in the charter to run, are nothing else than marks pointing to the line, which, notwithstanding those indicia
given in the charter, is on the parallel of latitude 35 34' north. The rule for a new trial should be discharged.
By the Court. Affirmed.
Cited: Hartzog v. Hubbard, 19 N.C. 243; Candler v. Lunsford, 20 N.C. 543;Wallace v. Maxwell, 32 N.C. 112; Southerland v. Stout, 68 N.C. 450;Bell v. Adams, 81 N.C. 122; Huffman v. Walker, *Page 59 83 N.C. 415; Tolson v. Mainor, 85 N.C. 239; S. v. Williams, 94 N.C. 895;Halliburton v. Slagle, 132 N.C. 955; Wool v. Fleetwood, 136 N.C. 468;Weeks v. Wilkins, 139 N.C. 217; Buchanan v. Harrington, 141 N.C. 41;Walker v. Taylor, 144 N.C. 178; Weston v. Lumber Co., 163 N.C. 81;Cooley v. Lee, 170 N.C. 22.